Good morning, Your Honors. Charles Lee of the Federal Defender's Office on behalf of Appellant Mr. Billy Clay Cochran. May it please the Court, in this case we have ineffective assistance of counsel based on trial counsel failing to file a suppression motion as that was objectively unreasonable under the two-part Strickland test showing deficient performance as well as prejudice. Now regarding the suppression issue, the Supreme Court has recently reiterated what the clearly established Federal law is in this area. It stated it is a basic principle of the Fourth Amendment that searches and seizures inside a home without a warrant are presumptively unreasonable. And that's Kentucky v. King from 2011. On June 16th of 2002, Deputy William Vincent seized a firearm hidden under a bench seat from Mr. Cochran's residence. This search was done without a warrant and with no exception to the warrant requirement. In its brief, the Attorney General attempts to – Is there any possibility here that the deputy thought he was acting under a parent authority? He's on the mother's property. Correct. You've got the travel trailer back there. I mean, he's not asking sort of for title as to who owns the travel trailer versus who owns the house. She appears to own the place. She's got keys in her house, told her that she's already been in the trailer with her daughter. Correct. And the Attorney General does argue in its brief that – And she let him in. Correct. And so this is third-party consent, allegedly, that the mother allowed law enforcement in. What was he supposed to do under these circumstances? He's supposed to get a warrant. He has probable cause for a warrant at this time. But what let him know that? Well, he had evidence that a crime occurred involving a firearm. He now had information there was a firearm, the location of the firearm. So there's absolutely – And where was the location? It was hidden under a bench seat. No, it was on the mother's property, wasn't it? Correct. But – The mother was the one who took him and let him in, wasn't she? Yes, that's correct. So what should have tipped him off? Wait a minute. I'm stepping across the line. What should have tipped him off? I'm glad Your Honor asked, because Deputy Randy Alvarez – I had to have you answer. Deputy Randy Alvarez testified at the trial.         He said he had no reason or justification to go into the trailer. Now, that night, we felt we had no reason or justification to go into the trailer. And that's at ER-281. He said we felt we had no – that's before they did the search or after they did the search? That's the day of the arrest on June 15th. They did the search on June 16th. So on the 15th, you have a deputy testify. We felt we had no reason or justification to go into the trailer. They understood this was a residence. They understood there was – He's speaking for Vincent as well? Well, for law enforcement. Okay. This is what law enforcement knew at the time. Right. But the search was the following day, right? Correct. Okay. So it was the following day. The mother lets them in. They're on her property. They've come through her house. She's got keys in the house. She has keys. And she has access. And this Court has held that mere access is not enough, that third-party consent And she knew the gun was there. She and her daughter had found it before, so she knew precisely what she was doing, didn't she? At this time, she is acting as an instrument or agent for the State because she Why? Well, only if she doesn't own the property. I would submit to the Court that she testified. The sheriffs asked that we try to find the gun because, and so we were doing as they requested in trying to find it. Right. But if she had said, my son took the gun after he held it to my head and discharged the bullet, he took the gun and he threw it into the woods. If the officer said, well, gee, if you can find the gun, that would sure help us. Right. There would be nothing that would alert them that there was any problem if they found it out in the woods. And law enforcement did search the area surrounding the trailer. They did search Mr. Cochran's person and his motorcycle when he was arrested. And they looked around Donna Cochran's house. It's only the fourth. There's no Fourth Amendment interest implicated in the woods. But, you know, I don't think there's any question here, Counsel, that Counsel could reasonably, very, very reasonably and perhaps should have filed a motion to suppress. Maybe it would have been successful. Maybe it wouldn't have been successful. I mean, I don't think it's obvious that it was going to be successful. But I think you've made a very good argument. If you were Counsel right now arguing the suppression motion, I think you've got a very, very good argument. I think it would be a very close case. But the fact that Counsel decided not to pursue that, that avenue, and to do other things doesn't necessarily show that there, that he's ineffective, his deficient performance, and. And prejudice. It doesn't. And, well, you've got the prejudice problem, and then you've got an AEDPA overlay. Well, what I would submit to the Court is that the only conceivable reason in this case to not file a suppression motion would be to impeach the law enforcement officers, as well as Donna Cochran, with the fact there was a bullet recovered by Donna Cochran. It was a .45 caliber hollow point bullet. The gun that was not suppressed was a Glock 9mm. So the only conceivable reason to not suppress this gun would be to question, confront, impeach the law enforcement's witnesses, as well as Donna Cochran, that this did not match, that this bullet could not have possibly gone to this gun. And that's the only conceivable reason for trial counsel to let the gun in. But he did not do that. And that's why it's objectively unreasonable for him to not file the suppression motion in this case. Although, in terms of prejudice, there's plenty of evidence from Ms. Cochran, she's quite detailed and has got the cartridge, that he put the gun to her head, in which case there's possession of a gun, whether it's, whether it was the 9mm or the .45, on which he could be convicted of these charges. That's correct, Your Honor. This case, as the Court set it up, comes down to credibility, to Donna Cochran's testimony. And the Supreme Court, in discussing Strickland, discussed the fact, discussing the prejudice that some merits will have a pervasive effect on the evidence as presented. In this case, the gun was discussed throughout. The prosecution discussed the gun with his two law enforcement witnesses, and he discussed the gun in his closing argument. Mr. Cochran was convicted of two offenses that revolved centrally around the gun. With suppression of this gun, it calls into question the fairness of the adversarial proceeding. Why would it call into question the fairness of the adversarial? She's going to testify that he held a gun to her head. That's correct, Your Honor. Again, we're at this issue that that could be impeached. That could be called into question because she testified this gun, she identified this gun, was whacked, and a bullet came out. And then she provided that bullet to the law enforcement officer. I want to back up to something that she said just a minute ago. So defense counsel sort of acquiesces in the introduction of the gun, doesn't move to suppress the 9-millimeter. But then also, you're telling us, didn't make the argument that the 9-millimeter is different from the 45? Correct. That's the only conceivable reason to allow the gun in from the defense perspective, to impeach law enforcement, to impeach Donna Cochran. She testified that the 9-millimeter is different from the 45. So it could have been good strategy to have allowed the gun to come in, but he just didn't take the next step, is your argument. Right. And that's why he was ineffective. And so in that case, then, he should have moved to suppress it. Correct. Because the gun was used by the prosecution throughout, and it bolstered Donna Cochran's testimony. This case largely came down to credibility. There was the genesis of this argument of the incidents was Mr. Cochran received some insurance money. The proceeds, he didn't have a checking account when it did Donna Cochran's banking account. She was supposed to have paid bills off for his benefit. And there was a dispute about how much money had been paid. So it comes down to credibility issues, and certainly Donna Cochran's testimony was bolstered by the gun. Counsel, I'm looking at the closing argument. And in the State's closing argument, he refers only to the 45, and he talks about the gun found on June 5th. In fact, he sort of makes the argument for the defense, doesn't he? He says that the gun found on June 16th is sort of irrelevant. He says that's not our theory. Our theory is that he had a 45, not a 9-millimeter. Correct. And that's just – it enhances defense counsel's ineffectiveness. He never made the argument. And this – Okay. But now you're making – but now your point about ineffective assistance is that the argument that he should have made, not the fact of the suppression. Because the prosecution here is arguing that the discovery of the 9-millimeter in the trailer is irrelevant to the State's theory. The State's theory was he held a 45 to her head. Right. Because that's the bullet that they had, and that's what she testified was, that she had – that it was a 45. Well, she testified she recovered the 45 bullet. But at the same time, she also identified that Glock 9-millimeter as being the gun used by Mr. Cochran on the May 30th incident. So clearly, that should have been impeached. And that failure to impeach on that critical fact is where the ineffective assistance comes from. Okay. You want to save the rest of your time? Yeah, I'd like to reserve that. Okay. Thank you, Mr. Lee. Mr. Feinstadt. May it please the Court. Max Feinstadt from the Attorney General's Office. I'm representing the respondent and appellee in this case. As was alluded to in Appellant's argument, the factual premise underlying this claim has been somewhat confused through the briefing. The gun that was found in the trailer was actually introduced by the defense specifically to impeach Donna Cochran, specifically to show that she was confused about whether it was a 9-millimeter Glock that was used or a .45 caliber, which is the bullet that she gave to law enforcement that she said came out of the gun that was held to her head. The only time the prosecution mentions the gun during the closing argument, the 9-millimeter gun, is to specifically say that's not part of our theory of the case, that we believe that it was a .45 caliber weapon that was used, and that you can infer that it's a real gun based on the other evidence we presented at trial. The appellant states that the trial counsel never made the argument that there was a discrepancy, that he brought in the 9-millimeter for impeachment. That is not the case. Throughout the defense closing argument, he references the discrepancy in Donna Cochran's testimony. He says there's no possible way that she could have used the 9-millimeter gun. It didn't match. And this is found in the record at four different points during the closing argument at RT 533, 535, 538, and 549. So in light of this, there's no possible way that trial counsel could have been defective or there could have been prejudice, because trial counsel made a tactical decision to introduce this evidence because it showed a discrepancy in what Donna Cochran thought happened on May 30 when the appellant came in and held the gun to her head. Further, Your Honors, there's no prejudice here when the defense, if there had been a suppression motion and it had been successful, there would have been no difference in the trial. I mean, if anything, the trial would have come out worse for appellant simply because there was less evidence supporting his defense. So you're saying that the presence of the or absence of the gun in the trial is completely irrelevant, so basically? Yes, Your Honor. It was defense evidence. So the absence of it would simply make the prosecution case that much stronger. And defense did a good job of connecting that evidence to trying to impeach Donna Cochran's credibility. He says in several instances that you can tell that she's either confused or making this up because the gun could not possibly have come or the bullet could not possibly have come out of the gun. And as far as the suppression itself, there was no reason for defense counsel to file a motion to keep out his own evidence. There are no questions from the panel. I would submit. Okay. Thank you, Mr. Feinstein. Thank you. Your Honor, I would contest that the gun was defense evidence. What happened in this trial was Deputy William Vincent was a prosecution witness. The prosecutor attempted to call Deputy Vincent to the stand to testify about the recovery of the gun. On that day of trial, for whatever reason, the prosecution could not get a hold of that officer. It was his day off. They didn't know how to find him. It was the prosecution's intent to call Deputy Vincent and elicit that testimony about the gun. What defense counsel did is he did reference the discrepancy. He did not consider the fact that Deputy Vincent was a prosecutor.  He did not consider Deputy Vincent a prosecutor. And if you know we're going to have to decide this case on the basis of what is in the record, not what might have been or could have been or whatever. That statement is in the record. That's what the prosecutor told the trial court. Then I misunderstood you. I thought you were relying on. I'm sorry? I thought you were relying on discussing. No. It is in the record that at that point when the court asked the prosecution what the next witness would be, this is what the district attorney told the court. In any event, Your Honors, the dots were never connected. Trial counsel never asked Donna Cochran why is it this bullet did not match this gun. He never confronted any of the law enforcement witnesses why this bullet did not match the gun. And a lot of that is because they never called the officer who recovered the gun to the stand. But that was a prosecution witness. This was defense. This was not a defense witness. And as he did not confront this discrepancy, this key discrepancy with any of the law enforcement or with Donna Cochran, he was not functioning as counsel guaranteed by the Sixth Amendment. Okay. Thank you, Your Honors. Thank you, Mr. Lee. We thank both counsel for the argument.
judges: Adelman, Farris, Bybee